## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | |
|---|---|
| **RICHARD AND EILEEN TREDINNICK, IRWIN AND RUTH SEARS, DAVID CRUSON, JAMES R. GLENN, SUZANNE HOUSEWRIGHT, JEFFREY R. AND KAREN T. MILLER, DALE AND JANICE MORRIS, BILLY AND CAROLYN WALKER, AND RONALD L. WYATT** | **Civil Action No.  4:16-CV-912** |
| **Plaintiff,** | **JURY TRIAL** |
| **v.** | |
| **Jackson National LIFE INSURANCE COMPANY** | |
| **Defendant.** | |

**Class Action Complaint**

Plaintiffs, by and through their attorney, file this action on behalf of themselves and other variable annuity contract holders who purchased their contracts from Jackson National Life Insurance Company ("Jackson National").  Plaintiffs assert that Jackson National has improperly charged all variable annuity contract holders with respect to what are called "surrender charges" in connection with administration of variable annuity contracts issued by Jackson National. In so doing, Jackson National has breached the contract it has made with each contract holder, acting uniformly in violation of the terms and conditions of the variable annuity contracts. Further, Jackson National has misrepresented the nature of the surrender charges imposed under the annuity contracts. Plaintiffs seek injunctive relief and damages to stop the wrongful conduct of Jackson National and to compensate those contract owners who have been wrongly charged.

## NATURE OF THE ACTION

1.    Plaintiffs are individuals who each, either individually or together with their spouses, purchased a variable annuity from Jackson National. Certain of the Plaintiffs have been charged surrender charges by Jackson National as enumerated below, and Plaintiffs allege that such charges have been in excess of the proper amount under the terms and conditions of the contract. As a result, Plaintiffs have been damaged, not only by the amount of the improper charge, but by the reduction in contractual benefits that is a collateral consequence of the improper charge.

2.      Defendant   Jackson   National   Life   Insurance   Company   ("JACKSON NATIONAL") is a stock life insurance company and is the company that issued the variable life annuity contracts to Plaintiffs.[1] Jackson National Life Insurance Company is licensed to do business in the State of Texas and may be served through CT Corporation.

## JURISDICTION AND VENUE

3.      This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332. This Court has personal jurisdiction over Defendant because Defendant is doing business in the State of Texas and is licensed in Texas. Furthermore, the aggregate amount in controversy for this class action exceeds $5,000,000, and, on information and belief, less than one-third of all Class Members reside in the State of Texas. *See* Class Action Fairness Act ("CAFA"), 28 U.S.C. §1332 and 1711.

4.      This Court has supplemental jurisdiction over the subject matter of any Texas common law and/or statutory claims pursuant to 28 U.S.C. §1367.  Such claims form part of the same case or controversy under Article III of the United States Constitution.

5.      Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because JACKSON NATIONAL has agents and transacts business here. Venue is also proper because a substantial part of the events or omissions giving rise to the claim occurred here.

---

[1]      Variable annuities are a hybrid insurance and investment product.  The investment component consists of units of interest in a separate account that are registered as securities under the Securities Act of 1933.  The separate account is registered as an investment company for purposes of the Investment Company Act of 1940 (ICA).  The insurance components of variable annuities consist of an annuity insurance contract issued by a state-regulated insurance company, and interests in one or more fixed accounts that invest in the general account of a state-regulated insurance company.

## PARTIES

### A.      PLAINTIFFS

6.      Plaintiffs Richard and Eileen Tredinnick are citizens and residents of the state of Texas and reside in McKinney, Texas.  The Tredinnicks purchased a variable annuity from JACKSON NATIONAL called Perspective II on April 25, 2011, and twelve variable annuities called Perspective Rewards between the dates of November 16, 2011 and January 27, 2012.  The Tredinnicks incurred the following surrender charges:  $51.29 on July 18, 2016, $6,123.37 on July 5, 2016, $30.05 on November 1, 2016, $6,849.48 on July 8, 2016, $5,513.22 on July 6, 2016, $5,845.45 on July 5, 2016, $623.04 on July 7, 2016, $6,039.65 on July 6, 2015, $16.99 on October 1, 2016, $16.99 on November 1, 2016, $6,954.07 on July 6, 2016, and $13.11 on November 1, 2016.

7.      Plaintiffs Irwin and Ruth Sears are citizens and residents of the state of Texas and reside in Rockwall, Texas. The Searses purchased a variable annuity from JACKSON NATIONAL called Perspective L on May 10, 2011, and nine variable annuities called Perspective Rewards between the dates of December 2011 and January 20, 2012.  The Searses incurred the following surrender charges:  $8,027.69 on July 28, 2016, $721.83 on August 3, 2016, $7,745.60 on July 28, 2016, $696.47 on August 3, 2016, $7,728.83 on July 27, 2016, $694.96 on August 3, 2016, $7,892.35 on July 28, 2016, and $709.67 on August 3, 2016.

8.      Plaintiff David Cruson is a citizen and resident of the state of Texas and resides in Pittsburg, Texas. Cruson purchased six variable annuities from JACKSON NATIONAL called Perspective II between the dates of January, 23, 2014 and January 31, 2014.  Cruson incurred the following surrender charges:  $3,933.80 on June 22, 2016, $3,624.60 on June 21, 2016, $3,209.41 on June 22, 2016, and $3,595.95 on June 21, 2016.

9.      Plaintiff James R. Glenn is a citizen and resident of the state of Texas and resides in Mt. Pleasant, Texas. Glenn purchased nine variable annuities from JACKSON NATIONAL called Perspective Rewards between the dates of November 21, 2011 and September 10, 2012. James R. Glenn incurred the following surrender charges:  $4,936.61 on June 14, 2016, $532.45 on June 20, 2016, $4,806.21 on June 14, 2016, $507.32 on June 24, 2016, $6,842.88 on June 14, 2016, $687.88 on June 23, 2016, $6,335.18 on June 14, 2016, $638.42 on June 24, 2016, $6,966.18 on June 14, 2016, and $701.46 on June 24, 2016.

10.      Plaintiff Suzanne Housewright is a citizen and resident of the state of Texas and resides in Dallas, Texas. Housewright purchased a variable annuity from JACKSON NATIONAL called Perspective II on October 10, 2011, and six variable annuities called Perspective Rewards between the dates of December 27, 2011 and January 9, 2012. Housewright incurred the following surrender charges:   $11,278.04 on August 8, 2016, $14,975.37 on August 8, 2016, $12,639.80 on August 8, 2016, and $10,443.89 on August 8, 2016.

11.      Plaintiffs Jeffrey R. and Karen T. Miller are citizens and residents of the state of Texas and reside in Denton, Texas.  The Millers purchased four variable annuities  from JACKSON NATIONAL called Perspective II between the dates of May 11, 2009 and January 11, 2012, and five variable annuities called Perspective Rewards between the dates of December 27, 2011 and June 29, 2011.  The Millers incurred the following surrender charges:  $4,929.52 on July 1, 2016, $7,696.17 on July 1, 2016, $1,623.43 on July 22, 2016, $3,086.70 on July 22, 2016, and $1,265.27 on July 26, 2016.

12.      Plaintiffs Dale and Janice Morris are citizens and residents of the state of Texas and reside in Southlake, Texas. The Morrises purchased seven variable annuities from

JACKSON NATIONAL called Perspective II between the dates of February 18, 2009 and May 7, 2013, and two variable annuities called Perspective Rewards on February 22, 2012.

13.     Plaintiffs Billy and Carolyn Walker are citizens and residents of the state of Texas and reside in Mt. Pleasant, Texas. The Walkers purchased five variable annuities from JACKSON NATIONAL called Perspective II between the dates of July 26, 2010 and July 29, 2010, and five variable annuities called Perspective Rewards between the dates of December 27, 2011 and September 10, 2012.  The Walkers incurred the following surrender charges:  $177.70 on June 30, 2016, $16.40 on October 18, 2016, $3,250.77 on June 24, 2016, $8,056.31 on June 23, 2016, $1,078.75 on June 29, 2016, $26.02 on October 18, 2016, $382.54 on July 1, 2016, $11.28 on October 18, 2016, $309.34 on June 24, 2016, $10.53 on October 18, 2016, $1,683.93 on June 24, 2016, and $1,316.08 on June 29, 2016.

14.     Plaintiffs Ronald L. Wyatt is a citizen and resident of the state of Texas and resides in Athens, Texas. Wyatt purchased five variable annuities from JACKSON NATIONAL called Perspective II between September 2, 2014 and September 3, 2014.

**B.     DEFENDANT**

15.     Defendant Jackson National Life Insurance Company is organized as an insurance company under the laws of the State of Michigan and maintains its principal place of business and headquarters in Lansing, Michigan.  Defendant Jackson National is licensed to transact insurance in 50 states and the District of Columbia (in the State of New York through its subsidiary, Jackson National Life Insurance Company of New York), and, has assets of nearly $70 billion according to A.M. Best Ratings, is touted as one of the largest individual annuity writers in the U.S. life insurance industry. Jackson National specializes in selling retirement income and savings products geared primarily toward retirees, with the majority of its products

being variable annuities.   The Texas Department of Insurance has approved JACKSON NATIONAL variable annuity products for sale in the state of Texas. JACKSON NATIONAL sells variable annuity products  around the country, including to residents in the Sherman Division of the Eastern District of Texas.

## FACTUAL BACKGROUND

### Jackson National's Conduct

16.    Plaintiffs bring this nationwide class action on behalf of themselves and other similarly situated variable annuity purchasers to halt and remedy the harm caused by Defendant Jackson National Life Insurance Company's misrepresentation of and systematic breach of its contract provisions in connection with the calculation of surrender charges.

17.    Defendant Jackson National markets and sells its variable annuity products on a national basis primarily through its network of individual sales agents, marketing organizations, third party marketing organizations ("TPMOs") brokerage firms and financial institutions. JACKSON NATIONAL uses four principal distribution channels to effectuate the sale of its variable annuities, which include independent broker/dealers, regional broker/dealers, financial institutions and individual sales agents (collectively referred to herein as "Affiliated Agents").

18.    A large portion of Defendant's annuity business is effectuated through Jackson National's "deal direct" system, wherein individual agents contract with and are appointed by Jackson National to promote and sell Jackson National products, including variable annuities.

19.    Defendant also utilizes marketing organizations and/or brokerage firms that hire and manage groups of independent sales agents on behalf of Jackson National, who are trained to sell Jackson National variable annuity products.

20.    Defendant Jackson National prepares, disseminates and approves standardized information, account service forms, brochures, illustrations, marketing and sales materials to Affiliated Agents for effectuating the sale of variable annuities to customers, many of whom are senior citizens. Jackson National markets its variable annuity products primarily to older Americans and senior citizens in the Eastern District of Texas and nationwide.

21.    Jackson National designs a variety of variable annuity products and product options that are represented to guarantee safety of principal, lifetime income streams, and market growth opportunities.  However, Jackson National omits and fails to disclose that it designs its variable annuity products and product options with features intended to discourage benefit utilization and penalize undesired contract holder behavior.  Defendant uniformly omits and fails to disclose material facts, costs, and risks associated with its design of these variable annuity products.

22.    Jackson National omits and fails to disclose that certain of its product features automatically result in adverse impacts to contract values unless contract holder action is taken.

23.    Jackson National also omits and fails to disclose that it engages in corporate management actions which penalize Affiliated Agents from engaging in activities that would result in utilization of contract holder benefits or from engaging in activities that would influence contract holder behavior in such a way that may in fact be in the best interest of the contract holder, but which is not profitable to the Defendant.

.

## DEFENDANTS' BREACH OF CONTRACT

### A.    The Structure of Jackson National's Variable Annuities

24.    Annuities are complex products that contain a number of different parts that have differing effects and results depending on performance and decisions made by the purchaser. The deferred annuity can be broken down into two types, either a fixed or variable annuity.    The basic difference is that fixed annuity premiums grow at a guaranteed fixed interest rate, whereas variable annuity premiums are invested in equity portfolios that fluctuate in value, thus being variable.

25.    The fixed annuity purchaser receives from the insurer an interest rate on the amount of premiums paid into the deferred fixed annuity, very similar to a debt instrument.

26.    The variable annuity purchaser experiences fluctuations in value since premiums are invested in equity portfolios.  These equity portfolios are called "sub-accounts" and consist of shares which are purchased with the annuity premium.  These shares are called "units" and represent the investment in the sub-account.  Every sub-account has a share price, or "unit price", which is used to determine the value of the sub-account, which fluctuates daily depending on the performance of the sub-account.  The annuity purchaser has the choice to invest in one or more sub-accounts of an overall separate account sponsored by the insurer, and contains many different investment vehicles similar to mutual funds which are managed by main stream, third party professional investment managers.

27.    A variable annuity is granted tax deferred status from the United States Internal Revenue Code regardless if the annuity purchase is made with IRA (qualified) funds or after-tax (nonqualified) funds. Nonqualified annuity investment gain is tax deferred until withdrawn, in which case the withdrawal of gain over the original cost basis is taxed at the contract owner's

ordinary income tax rates in effect at the time of withdrawal.  A qualified annuity is treated the same as other similar IRA investments in terms of tax deferral and taxation of withdrawals.

28.     The variable annuities sold by JACKSON NATIONAL contain various components with different characteristics.  The separate accounts, which contain sub-accounts that each hold a portfolio of stocks or bonds or other investments, is federally regulated, and (if no exemption applies) the interests in the separate accounts available under the variable annuity contracts are registered as securities and sold pursuant to federal security laws.

29.     Variable annuities sold by Jackson National can be purchased with optional benefits called "living benefit riders" and "death benefit riders" for an extra cost.  A living benefit is designed to provide an insurance benefit while the contract owner is living and generally consists of a "benefit base" from which the living benefit is determined.  A death benefit is designed to provide an insurance benefit when the contract owner dies and generally consists of a "benefit base" from which the death benefit is determined.

30.     A variable annuity product is selected, optional benefits chosen, and then applied for via a paper application.  Once the premium (purchase payment) is accepted by Jackson National, a contract is delivered to the annuity purchaser.  The contract contains the terms and provisions of how the annuity will work, describes the fees, and the various features of the annuity.  The contract also contains the terms and provisions of how the optional living benefit rider and death benefit rider will work, describes the fees for those optional benefits, and the various features of those benefits.  The contract is either accepted or rejected by the annuity purchaser.  The contract can be rejected by the annuity purchaser within the "free look period", which is typically 10 to 30 days depending on the state in which the annuity was purchased, wherein the annuity purchaser returns the contract to the issuer and receives a refund.

## B. Surrender Charges

31. Costs and fees are important to the performance of a variable annuity contract. Surrender charges are a very important component of variable annuity policies and a source of significant revenue to issuers like Jackson National. The SEC has published guidelines for consumers that highlight the importance of these charges and the impact that they can have on the value of the purchaser's contract:

> You will pay several charges when you invest in a variable annuity. Be sure you understand all the charges before you invest. **These charges will reduce the value of your account and the return on your investment.** Often, they will include the following:
>
> **Surrender charges** – If you withdraw money from a variable annuity within a certain period after a purchase payment (typically within six to eight years, but sometimes as long as ten years), the insurance company usually will assess a "surrender" charge, which is a type of sales charge. This charge is used to pay your financial professional a commission for selling the variable annuity to you. Generally, the surrender charge is a percentage of the amount withdrawn, and declines gradually over a period of several years, known as the "**surrender period**." For example, a 7% charge might apply in the first year after a purchase payment, 6% in the second year, 5% in the third year, and so on until the eighth year, when the surrender charge no longer applies. Often, contracts will allow you to withdraw part of your account value each year – 10% or 15% of your account value, for example – without paying a surrender charge.
>
> **Example:** You purchase a variable annuity contract with a $10,000 purchase payment. The contract has a schedule of surrender charges, beginning with a 7% charge in the first year, and declining by 1% each year. In addition, you are allowed to withdraw 10% of your contract value each year free of surrender charges. In the first year, you decide to withdraw $5,000, or one-half of your contract value of $10,000 (assuming that your contract value has not increased or decreased because of investment performance). In this case, you could withdraw $1,000 (10% of contract value) free of surrender charges, but you would pay a surrender charge of 7%, or $280, on the other $4,000 withdrawn.

See https://www.sec.gov/investor/pubs/varannty.htm

32.     Jackson National earns very substantial and growing amounts from the surrender charges paid by its contract holders. During the years 2009-2013, Jackson National reported publicly the amount of surrender charges that it earned each year as follows:

| Calendar Year | Surrender Charges |
| --- | --- |
| 2009 | $25,432,934 |
| 2010 | $31,960,116 |
| 2011 | $37,748,144 |
| 2012 | $40,792,400 |
| 2013 | $52,189,880 |

33.     Beginning with the 2014 calendar year, on information and belief, Jackson National stopped reporting the specific amount of surrender charges in the same public reporting in which it had been reported for the 2009-13 calendar years. Given the steady upward trend of the reported numbers, it is reasonable to assume that Jackson National reaped the benefit of more than $50 million in surrender charges for each of the years 2014 and 2015.

34.     Given the astounding level of these charges which are assessed against the savings of retirees and other variable annuity contract holders, one would expect that Jackson National would be scrupulously fair in assessing such charges. In fact, however, that is not the case, and instead, Jackson National is assessing excess charges as a matter of uniform application of its methodology and breaching the terms of its contract as to all contract holders who incur such charges.

35.     By virtue of the methodology employed, Jackson National is not only assessing a surrender charge on the withdrawal amount, but is actually ***assessing a surrender charge on the***

*surrender charge*. By doing so, Jackson National violates the plain language of the contract that it has written, and acts contrary to the explanation and example put forth by the SEC for the benefit of consumers. Such improper conduct should be prohibited and all past and current contract holders should be compensated for the excess surrender charges that have been imposed.

36.      The harm suffered by variable annuity contract holders is not limited just to the amount of the improper surrender charge. Each imposition of an improper surrender charge results in a reduction in the living  benefits payable to that contract holder over time. Also, each imposition on an improper surrender charge results in a reduction in the death benefits payable to that contract holder's beneficiary. Thus, the harm caused by Jackson National is compounded over time and should be fully reimbursed to all past and current contract holders.

## CLASS ACTION ALLEGATIONS

37.      Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.  Plaintiffs bring this action individually and on behalf of all similarly situated persons as the Court may determine to be appropriate for class certification treatment, pursuant to Federal Rules of Civil Procedure 23(a) and 23(b). Plaintiffs seek to represent a nationwide class.

<u>The Nationwide Surrender Charge Class</u>

38.      The proposed Nationwide Surrender Charge Class is defined as follows:

All persons who, within the applicable statute of limitations, purchased a Perspective family series, Elite Access series, or Retirement Latitudes series of variable annuity products from Jackson National Life Insurance Company or its affiliates, and incurred a surrender charge during their ownership of such product ("Nationwide Surrender Charge Class");

39.     The Nationwide Surrender Charge Class is reasonably estimated to be in the thousands or tens of thousands and is thus so numerous that joinder of all its members is impracticable. The precise number of class members and their addresses are unknown to Plaintiffs, but can be ascertained through Defendant's records. Class Members may be notified of the pendency of this action by mailing, publication or other notice.

40.     There is a well-defined community of interest in the relevant questions of law and fact affecting the putative Nationwide Surrender Charge Class members concerning the breaches of contract and the uniform application of surrender charges in violation of the contract provisions.

41.     Common questions of law and fact predominate over any individual questions affecting Nationwide Surrender Charge Class members, including, but not limited to, the following:

- Whether Defendant violated the provisions of the variable annuity contracts in the way in which it assessed surrender charges;

- Whether Defendant is liable for the excess surrender charges that it has imposed;

- Whether Defendant has harmed the members of the class in connection with living benefits;

- Whether Defendant has harmed members of the class in connection with death benefits;

- Whether Plaintiffs and members of the Nationwide Surrender Charge Class have sustained damages;

- Whether Plaintiffs and the Nationwide Surrender Charge Class are entitled to damages;

42.     Common questions of law and fact predominate over any individual questions affecting Class members, including, but not limited to, the specific amount of damages that each Plaintiff or class member has suffered.

CLASS ACTION COMPLAINT-Page 14

43.     With respect to each putative class, Plaintiffs' claims are typical of those of the absent class members. If brought and prosecuted individually, the claims of each class member would require proof of many of the same material and substantive facts, rely upon the same remedial theories and seek the same relief.

44.     Plaintiffs will fairly and adequately protect the interests of the classes and have no interests adverse to or that directly and irrevocably conflict with the interests of other class members.

45.     Plaintiffs are willing and prepared to serve the Court and the putative classes in a representative capacity with all of the obligations and duties material thereto.

46.     Plaintiffs have retained the services of counsel who are experienced in complex class action litigation. Plaintiffs' counsel will adequately prosecute this action, and will otherwise assert, protect and fairly and adequately represent Plaintiffs and all absent class members.

47.     Class certification is appropriate under F.R.C. P. 23(b)(1), in that the prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for the parties opposing the class. Such incompatible standards of conduct and varying adjudications on the same essential  facts, proof and legal theories would also create and allow the existence of inconsistent and incompatible rights within the classes.

48.     Class certification is appropriate under F.R.C.P. 23(b)(3), in that common questions of law and fact predominate over any questions affecting only individual class members.

49.     Moreover, a class action is superior to other methods for the fair and efficient adjudication of the controversies raised in this Complaint because:

    a)  individual claims by the class members would be impracticable as the costs of pursuit would far exceed what any one class member has at stake;

    b)  little individual litigation has been commenced over the controversies alleged in this Complaint, and individual class members are unlikely to have an interest in separately prosecuting and controlling individual actions;

    c)  the concentration of litigation of these claims in one forum will achieve efficiency and promote judicial economy; and

    d)  the proposed class action is manageable.

50.     Excluded from the Class are Defendants, Defendants' officers and directors, those persons' immediate families, and the successors and predecessors of any such excluded person or entity.

The Nationwide Injunctive Surrender Charge Class

51.     The proposed Nationwide Injunctive Surrender Charge Class is defined as follows:

All persons who, within the applicable statute of limitations, purchased a Perspective family series, Elite Access series, or Retirement Latitudes series of variable annuity products from Jackson National Life Insurance Company or its affiliates ("Nationwide Injunctive Surrender Charge Class");

52.     The Nationwide Injunctive Surrender Charge Class is reasonably estimated to be in the thousands or tens of thousands and is thus so numerous that joinder of all its members is impracticable. The precise number of class members and their addresses are unknown to

Plaintiffs, but can be ascertained through Defendant's records. Class Members may be notified of the pendency of this action by mailing, publication or other notice.

53.     There is a well-defined community of interest in the relevant questions of law and fact affecting the putative Nationwide Injunctive Surrender Charge Class members concerning the breaches of contract and the uniform application of surrender charges in violation of the contract provisions.

54.     Common questions of law and fact predominate over any individual questions affecting Nationwide Injunctive Surrender Charge Class members, including, but not limited to, the following:

- Whether Defendant has misrepresented the provisions of the variable annuity contracts in the way in which it assessed surrender charges;

- Whether Defendants marketing materials, including the Prospectus for each variable annuity product, misrepresent the way in which Jackson National will assess Surrender Charges

- Whether Defendant's Affiliated Agents are disseminating false information about the manner in which Surrender Charges are imposed

- Whether declaratory or injunctive relief should be granted to stop the offending conduct

55.     Common questions of law and fact predominate over any individual questions affecting Class members, including, but not limited to, the specific and uniform way that Defendant has represented the calculation of Surrender Charges and the way in which Defendant has imposed Surrender Charges.

56.     With respect to each putative class, Plaintiffs' claims are typical of those of the absent class members. If brought and prosecuted individually, the claims of each class member

would require proof of many of the same material and substantive facts, rely upon the same remedial theories and seek the same relief.

57.     Plaintiffs will fairly and adequately protect the interests of the classes and have no interests adverse to or that directly and irrevocably conflict with the interests of other class members.

58.     Plaintiffs are willing and prepared to serve the Court and the putative classes in a representative capacity with all of the obligations and duties material thereto.

59.     Plaintiffs have retained the services of counsel who are experienced in complex class action litigation. Plaintiffs' counsel will adequately prosecute this action, and will otherwise assert, protect and fairly and adequately represent Plaintiffs and all absent class members.

60.     Class certification is appropriate under F.R.C. P. 23(b)(1), in that the prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for the parties opposing the class. Such incompatible standards of conduct and varying adjudications on the same essential facts, proof and legal theories would also create and allow the existence of inconsistent and incompatible rights within the classes.

61.     Class certification is appropriate under F.R.C.P. 23(b)(2), in that Defendant has acted  or refused to act on grounds generally applicable to each class, making final declaratory, injunctive  or other relief appropriate.

62.     Class certification is appropriate under F.R.C.P. 23(b)(3), in that common questions of law and fact predominate over any questions affecting only individual class members.

63. Moreover, a class action is superior to other methods for the fair and efficient adjudication of the controversies raised in this Complaint because:

      a) individual claims by the class members would be impracticable as the costs of pursuit would far exceed what any one class member has at stake;

      b) little individual litigation has been commenced over the controversies alleged in this Complaint, and individual class members are unlikely to have an interest in separately prosecuting and controlling individual actions;

      c) the concentration of litigation of these claims in one forum will achieve efficiency and promote judicial economy; and

      d) the proposed class action is manageable.

64. Excluded from the Class are Defendants, Defendants' officers and directors, those persons' immediate families, and the successors and predecessors of any such excluded person or entity.

## COUNT ONE

### Breach of Contract

65. Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

66. Jackson National's assessment of surrender charges was done consistently and uniformly in a manner contrary to the terms and conditions of the applicable contracts. In particular, Jackson National's assessment of a surrender charge on a surrender charge was a violation of the variable annuity contracts issued by Jackson National.

67. Jackson National's actions in violation of the variable annuity contracts were done intentionally or recklessly.

68.     All conditions precedent to the liability or obligations of Jackson National have occurred or have been waived.

69.     Plaintiffs and each member of the Nationwide Surrender Charge Class have suffered damage in an amount to be determined. Plaintiffs allege that the total damages to the Nationwide Surrender Charge Class exceed the sum of five million dollars ($5,000,000).

## COUNT TWO

### Breach of Fiduciary Duty Against Jackson National

70.     Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

71.     Plaintiffs have a fiduciary relationship with Jackson National.  Jackson National controlled the premium amounts and had complete control of the calculation of amounts to be deducted as surrender charge.

72.     Jackson National breached its fiduciary duties to Plaintiffs by intentionally or recklessly performing calculations that were contrary to the contract provisions and failing to inform Plaintiffs or members of the Class that they were acting in contravention of the contract. Jackson National breached its fiduciary duty to Plaintiffs by placing its own interest above that of Plaintiffs.

73.     Jackson National's acts, omissions and false representations directly and proximately caused injury to Plaintiffs, which resulted in damages to be determined, but consisting of wrongful surrender charges collected, reduced living benefits under the Jackson National contracts, and reduced death benefits under the Jackson National contracts.

74.     Plaintiffs seek damages proximately caused by Jackson National.

**Punitive Damages**.

75.     Plaintiffs' injury resulted from Jackson National's intentional or reckless acts, which entitles Plaintiffs to exemplary damages.  Jackson National knew, or was severely reckless in not knowing, that its actions were in violation of the contract terms and provisions, and that its omissions were material and harmful to Plaintiffs and all members of the class.

76.     All conditions precedent to Plaintiffs' claim for relief have been performed or have occurred.

## COUNT THREE

### Negligent Misrepresentation

77.     Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

78.     By virtue of its dissemination of marketing materials and other uniform documents describing the variable annuities purchased by members of the putative class and through the uniform sales pitches made by its agents, Jackson National has disseminated false information to all members of the putative class about surrender charges.  The way in which Jackson National describes the imposition of Surrender Charges is very different than the way in which Jackson National actually calculates and imposes the Surrender Charges. These misrepresentations, made to Plaintiffs in this district, were made negligently, or recklessly without regard for the truth of such representations. All Plaintiffs and class members are deemed to have relied on these material misrepresentations, and have suffered damages as a result of these misrepresentations in that the Surrender Charges actually imposed are more than what was represented to the members of the putative class.

**Injunctive Relief**

79.     Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

80.     Jackson National's actions in violation of the terms of the variable annuity contracts continue and are ongoing.

81.     Plaintiffs seek an injunction to prohibit Jackson National from continuing to violate the terms of the variable annuity contracts with respect to the calculation of surrender charges.

82.     Plaintiffs have no adequate remedy at law because it would require successive lawsuits to compensate Plaintiffs and members of the Class for the ongoing harm and the only effective way to protect the class members is to enjoin Defendant from the improper conduct.

83.     All conditions precedent to Plaintiffs' claim for relief have been performed or have occurred.

84.     Injunctive relief is appropriate for certification under Rule 23(b)(2) because Jackson National has acted on grounds and in ways that apply generally to all class members, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

**Plaintiffs' Demand for Jury Trial**

85.     Plaintiffs hereby demand a trial by jury.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs pray for relief and judgment as follows:

a.      Determining that this action is a proper class action under Rule 23 of the Federal

Rules of Civil Procedure;

b.      Awarding damages to the class in the amount of improper surrender charges paid by Plaintiffs and the members of the Class,

c.      enjoining the improper calculation of surrender charges upon withdrawals made by Plaintiffs and  the Class members from their Jackson National Life Insurance Company variable annuity contracts;

d.      Awarding compensatory damages in favor of Plaintiffs and the other Class members against Jackson National for all damages sustained as a result of Defendants' wrongdoing, in amounts to be proven at trial, including pre-judgment interest thereon;

e.      Awarding other appropriate injunctive relief against Jackson National such that the contracts of Plaintiffs' and the other Class members' can be properly managed pending trial of this case;

f.      Awarding Plaintiffs their reasonable costs and expenses incurred in this action, including counsel fees and expert fees as may be authorized by law; and

g.      Such other and further relief as the Court may deem just and proper.

Dated: November 29, 2016.

Respectfully submitted,

**MCKOOL SMITH, P.C.**

/s/ Lewis T. LeClair
Lewis T. LeClair
lleclair@mckoolsmith.com
**MCKOOL SMITH, P.C.**
300 Crescent Court Suite 1500
Dallas, TX 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044

Attorney In Charge For Plaintiffs

Samuel F. Baxter
Texas Bar No. 1938000
**MCKOOL SMITH, P.C.**
104 East Houston, Suite 300
Marshall, Texas 75670
Telephone: (903)923-9001
Telecopier: (903) 923-9099

Gary D. Corley
**CORLEY LAW FIRM**
Texas Bar No. 04823800
108 North Travis Street
Sherman, Texas  75090
Tel.  (903) 892-1048
Fax. (214) 260-4925
E-mail: garycorley@gcorleylaw.com

ATTORNEYS FOR Plaintiffs

CLASS ACTION COMPLAINT-Page 24