# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| DAVID CRUSON and JOHN DENMAN | § § | |
| v. | § § | Civil Action No. 4:16-CV-00912<br>Judge Mazzant |
| JACKSON NATIONAL LIFE INSURANCE COMPANY | § § § § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is the Defendant Jackson National Life Insurance Company's Emergency Motion to Stay Pending Interlocutory Appeal (Dkt. #101). After reviewing the relevant pleadings, the Court finds that the motion should be granted in part.

## BACKGROUND

Plaintiffs David Cruson and John Denman ("Plaintiffs") bring this proposed nationwide class action on behalf of themselves and others who purchased variable annuity investment products from Defendant Jackson National Life Insurance Company ("Jackson"). In so doing, Plaintiffs aim to wrest and remedy harm resulting from Jackson's systemic contractual misrepresentation and breach when assessing certain fees—surrender charges—on those products.

Jackson nationally markets variable annuities through a network of individual sales agents, marketing organizations, third-party marketing organizations, brokerage firms, and financial institutions. Jackson sells variable annuities through four distribution channels—independent broker/dealers, regional broker/dealers, financial institutions, and individual sales agents ("affiliated agents"). To support its affiliated sales agents, Jackson prepares, approves, and disseminates account service forms, brochures, marketing, and sales materials. Affiliated agents use these materials to market and sell annuities to customers, many of whom are senior citizens.

Jackson primarily markets variable annuities to older customers and senior citizens in the Eastern District of Texas and nationwide. When marketing its annuities, Jackson touts their guaranteed safety of principal, lifetime income streams, and opportunities for market growth.

A deferred annuity can either be fixed or variable. Fixed annuities appreciate at a guaranteed fixed interest rate. The issuer of a fixed annuity pays the purchaser a guaranteed interest rate—similar to a debt instrument. Variable annuities, on the other hand, invest in equity portfolios and do not appreciate at a guaranteed fixed rate. As equity markets shift in value, so does the return on the annuity.

Fees significantly shape variable annuity performance. One fee—the surrender charge—generates substantial revenue for issuers like Jackson. Such surrender charges include withdrawal charges and recapture charges (collectively, "surrender charge(s)"). From 2009-2013, Jackson published the following surrender charges—2009: $25,432,934; 2010: $31,960,116; 2011: $37,748,144; 2012: $40,792,400; 2013: $52,189,880. (Dkt. #10 at pp. 11, 12). In 2014, Jackson stopped publicly reporting surrender charges. Given this burgeoning trend of annual surrender charges, however, Plaintiffs presume that Jackson earned over $50 million in surrender charges in 2014 and 2015.

Plaintiffs claim that Jackson assesses surrender charges on withdrawals from annuities and again on the surrender charges themselves. In doing so, Plaintiffs aver that Jackson breaches the plain language of its contract and contravenes Securities and Exchange Commission annuity consumer protection guidelines. Plaintiffs aim to stop this practice and compensate current contract holders who paid excess surrender charges.

On May 9, 2018, the Court granted in part and denied in part Plaintiffs' Opposed Motion for Class Certification and Appointment of Class Counsel (the "Certification Order") (Dkt. #96).

It its Certification Order, the Court certified Plaintiffs' proposed class under Federal Rule of Civil Procedure 23(b)(3), and the class consists of:

> All persons who, within the applicable statute of limitations, purchased a Perspective series, Elite Access series, or Retirement Latitudes series of variable annuity products from Jackson National Life Insurance Company or its affiliates, and incurred a Surrender Charge during their ownership of such product but excluding the judge and staff to whom this case is assigned and any member of the judge's immediate family.

(Dkt. #96 at p. 35).

Following the Certification Order, Jackson filed a Notice of Filing Rule 23(f) Petition, indicating that Jackson requested permission to appeal the Certification Order to the United States Court of Appeals for the Fifth Circuit (Dkt. #102). On May 23, 2018, Jackson filed an Emergency Motion to Stay Pending Interlocutory Appeal (Dkt. #101). On May 31, 2018, Plaintiffs filed a response (Dkt. #105). On June 4, 2018, Jackson filed a reply (Dkt. #107).

On May 29, 2018, the parties filed a Joint Motion to Amend Scheduling Order, requesting a 70-day continuance of the all scheduling deadlines and to move the mediation deadline to four weeks after the Fifth Circuit rules on Jackson's Rule 23(f) petition (Dkt. #104). On June 4, 2018, the Court granted the parties' request (Dkt. #106).

## LEGAL STANDARD

Under Fifth Circuit law, the stay of a case pending appeal constitutes "extraordinary relief." *Reading & Bates Petroleum Co. v. Musslewhite*, 14 F.3d 271, 275 (5th Cir. 1994). The decision whether to stay a case lies within the sound discretion of the district court. *Weingarten Realty Inv'rs v. Miller*, 611 F.3d 904, 910 (5th Cir. 2011). District courts have the inherent power to stay proceedings pending before them, but this power is "incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *In re M.J. Beebe*, No. 95-20244, 1995 WL 337666, at *2

(5th Cir. May 15, 1995) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). Courts determining whether to issue a stay pending appeal may consider factors such as (1) whether the movant is likely to succeed on the merits; (2) whether the movant would suffer irreparable harm absent a stay; (3) whether granting the stay would substantially harm the other parties; and (4) whether granting the stay would serve the public interest. *In re First S. Sav. Ass'n*, 820 F.2d 700, 704 (5th Cir. 1987). *Nken v. Holder*, 556 U.S. 418, 434 (2009) (internal quotation marks and citation omitted). These traditional four factors "must be fully applied except where there is a serious legal question involved *and* the balance of equities heavily favors a stay; in those situations, the movant only needs to present a substantial case on the merits." *Weingarten Realty Investors*, 661 F.3d at 910 (emphasis added).

The movant bears the burden of showing that a stay is warranted. *Id.* Where "there is even a fair possibility that the stay . . . will work damage to someone else," the party seeking a stay "must make out a clear case of hardship or inequity in being required to go forward." *Landis*, 299 U.S. at 255; *see Ind. State Police Pension Tr. v. Chrysler LLC*, 556 U.S. 960, 961 (2009) (citation omitted) ("'[A] stay is not a matter of right, even if irreparable injury might result otherwise.' It is instead an exercise of judicial discretion, and the 'party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion.'").

## ANALYSIS

Jackson asks the Court to enter a stay of all further proceedings pending their Rule 23(f) interlocutory appeal of the Court's Certification Order, certifying the class action because they can establish all four elements required by law. Plaintiffs contends that the Court should deny the stay because the class will suffer substantial harm. Further, Plaintiffs assert that Jackson cannot satisfy the remaining elements necessary to justify the Court issuing a stay.

4

### A. Likelihood of Success on the Merits

In order for the Court to issue a stay, the movant must first demonstrate a likelihood of success on the merits on appeal. *See Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d 406, 410 (5th Cir. 2013). The Fifth Circuit has stated that "the movant need not always show a 'probability' of success on the merits; instead, the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of equities weighs heavily in favor of granting the stay." *Ruiz v. Estelle*, 650 F.2d 555, 565–66 (5th Cir. Unit A June 1981) (citing *Providence Journal v. Fed. Bureau of Investigation*, 595 F.2d 889 (1st Cir. 1979); *Hous. Insulation Contractors Ass'n v. Nat'l Labor Relations Bd.*, 339 F.2d 868, 870 (5th Cir. 1964)). The Fifth Circuit further explained that "if the balance of equities (i.e. consideration of the other three factors) is not heavily tilted in the movant's favor, the movant must then make a more substantial showing of likelihood of success on the merits." *Id.* The Court acknowledges that there are serious legal questions involved in the case, and as such, if Jackson demonstrate a substantial case on the merits, then this element is met.

Jackson asserts that it has presented a substantial case on the merits based on the Court's resolution of the jurisdictional issue and the Court's class certification analysis under Rule 23(b). First, Jackson asserts that under the Supreme Court's decision in *Bristol-Myers Squibb Co. v. Superior Court of Ca., San Francisco Cty.*, 137 S. Ct. 1773, 1775, 198 L. Ed. 2d 395 (2017), the Court's exercise of specific personal jurisdiction over Jackson for out-of-state named plaintiffs is improper (Dkt. #101 at p. 5). Jackson also argues that the Court erred in finding that Jackson waived its objection to personal jurisdiction because before the Court certified the class, there were no out-of-state named plaintiffs to object to (Dkt. #101 at p. 5) ("Given the procedural posture of

this case, and because there were no out-of-state named plaintiffs, Jackson . . . did not waive its objection [to personal jurisdiction.]") (*See also* Dkt. #107 at p. 4).[1]

Jackson additionally attacks the Court's conclusion that common questions of law or fact predominate over individual questions required by Rule 23(b) (Dkt. #101 at p. 5). *See* FED. R. CIV. P. 23(b). Jackson asserts that the "Court incorrectly disregarded the individualized inquiry [and proof] needed for each plaintiff's breach of contract claim", including Jackson's affirmative defenses of ratification and waiver (Dkt. #101 at p. 6). Lastly, Jackson argues that certification was inappropriate because Plaintiffs have failed to present a workable damages model (Dkt. #101 at p. 6).

The Fifth Circuit recognizes that a party presents a substantial case on the merits when there is a lack of precedent to clarify the issues at bar.[2] Given the novelty of this matter and significant lack of precedent regarding the application of *Bristol-Myers*, the Court finds that Jackson has made a substantial case on the merits. Since Jackson has established that this proceeding involves a serious legal question presenting a substantial case on the merits, the Court asks whether the balance of equities favors granting a stay. *Ruiz*, 650 F.2d at 565–66.

---

[1] The Court did not address this argument in the Certification Order because Jackson first raised the argument in its Sur-Reply in Response to Plaintiffs' Opposed Motion for Class Certification and Appointment of Class Counsel (Dkt. #81 at pp. 9–10). (*See* Dkt. #57 at pp. 23–25). *See Branch v. CEMEX, Inc.*, No. H-11-1953, 2012 WL 2357280, at *9 (S.D. Tex. June 20, 2012) ("Legal arguments raised for the first time in a sur-reply, like arguments raised for the first time in a reply, are waived."); *Miles Bramwell USA, LLC v. Weight Watchers Intern., Inc.*, No. 4:12-cv-292, 2013 WL 1797031, at *4 (March 27, 2013), *adopted by* 2013 WL 1793934 (E.D. Tex. April 26, 2013). However, Jackson filed a Rule 12(b)(2) Motion to Dismiss Certain Claims (Dkt. #99) for lack of specific personal jurisdiction after the Court granted class certification. If necessary, the Court will address Jackson's motion to dismiss following the Fifth Circuit's ruling on the appeal of the Certification Order.

[2] In *Ruiz*, the Fifth Circuit looked to case law to find a constitutional mandate for the disputed legal issue. 650 F.2d at 568. The Fifth Circuit found that there was no "constitutionally mandated square footage requirement" for prison cells based on its reading of *Rhodes v. Chapman*, 101 S. Ct. 2392, 2395–2396 (1981), *Newman v. Alabama*, 559 F.2d 283, 288 (5th Cir. 1977), and *William v. Edwards*, 547 F.2d 1206, 1215 (5th Cir. 1977). *Id.* at 568. The Fifth Circuit subsequently found that "we know of no constitutional mandate for correctional units to be situated within 50 miles of a major metropolitan area in order to ensure adequate staffing. Therefore, we conclude that the State has made a substantial case on the merits. . . ." *Id.* at 574.

**B. Balancing the Equitable Factors**

When determining whether to grant a stay, the Court must also weigh the following equitable factors: (1) whether the movant will suffer irreparable harm absent a stay; (2) whether the non-movant will suffer injury if the stay is granted; and (3) whether a stay serves the public interest. *See In re First S. Sav. Ass'n*, 820 F.2d at 704.

"[A]n 'injury is "irreparable" only if it cannot be undone through monetary remedies.'" *Burgess v. Fed. Deposit Ins. Corp.,* 871 F.3d 297, 304 (5th Cir. 2017) (quoting *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464 F.2d 464, 472 (5th Cir. 1985)) (quoting *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. Unit B Nov. 1981)). "'The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.'" *Sampson v. Murray*, 415 U.S. 61, 90 (1974) (quoting *Va. Petrol. Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.3d 921, 925 (D.C. Cir. 1958)).[3]

Jackson asserts that absent a stay, it will endure extensive discovery and substantial motions practice that could be rendered unnecessary if the Fifth Circuit finds that the Court lacks sufficient jurisdiction over it (Dkt. #101 at pp. 6–7). Courts have recognized that the cost of pretrial litigation and discovery for defending a class action lawsuit with numerous plaintiffs can amount to irreparable hardship. *Pena v. Taylor Farms Pacific, Inc.*, 2015 WL 5103157 at *5 (E.D. Cal. Aug. 31, 2015) (class size: "several thousand" members); *Risinger v. SOC LLC*, 2015 WL 7573191 at *2–3 (D. Nev. Nov. 24, 2015) (class size: 4,000 plaintiffs); *Brown v. Wal-Mart*

---

[3] When evaluating claimed irreparable harm for a motion to stay proceedings, the Fifth Circuit applies criteria that is very similar to that it uses to assess irreparable harm in a motion for preliminary injunction. *Burgess*, 871 F.3d at 304. Under such criteria, alleged irreparable harm cannot be speculative. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 21–22 (2008) (emphasis added) (finding that a movant must show that "he is *likely* to suffer irreparable harm. . . ."); *see also United States v. Emerson*, 270 F.3d 203, 262 (5th Cir. 2001) ("Speculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant . . . *A presently existing actual threat must be shown*.") (emphasis in original).

*Stores, Inc.*, 2012 WL 5818300, at *4 (N.D. Cal. Nov. 15, 2012) (class size: 22,000 plaintiffs). The class in this matter numbers in the thousands or tens of thousands, and the Court appreciates the pretrial burdens that accompany a large class of plaintiffs. The Court also finds that Plaintiffs will shoulder no pretrial litigation costs if the case is stayed during the pendency of the appeal.

Lastly, the Court's most recent Fourth Amended Scheduling Order (Dkt. #106) extended all deadlines until the Fifth Circuit likely rules on the Certification Order. Thus, any urgency or timeliness concerns Plaintiffs may have are also alleviated by the Fourth Amended Scheduling Order.

Therefore, although the Court recognizes that pretrial litigation and discovery for defending a class action lawsuit can constitute irreparable harm, the Court declines to find that such harm in this case reaches an irreparable level. However, the Court does find that the third factor—whether issuance of the stay will substantially injure other parties interested in the proceeding—weighs in favor issuing a stay.

Lastly, Jackson maintains that issuing a stay of the Certification Order until the Fifth Circuit can resolve the complex and important issues in this case favors the public interest. The Court finds that the public policy of efficient allocation of judicial resources should be considered because Jackson has shown a serious legal question on appeal and all deadlines have been extended until the likely resolution of the appeal. Thus, there is "reason to invoke the general public policy of preserving judicial resources from the risk of reversal." *Weingarten Realty Inv'rs*, 661 F.3d at 913 ("Such a policy might favor staying district court proceedings where a difficult question is presented on appeal, because the district court's order could be overturned.").

Jackson has demonstrated that Plaintiffs would suffer no substantial harm due to a stay and that a stay would serve the public interest. Thus, the balance of equities supports granting a stay

pending appeal. However, the Court exempts ruling on Jackson's motion for summary judgment (Dkt. #59) from the stay. The motion is currently ripe and the Court has already heard oral argument from counsel at the hearing held on June 5, 2018. Furthermore, the motion is unaffected by the Fifth Circuit's ruling on the jurisdictional issue—it is uncontested that the Court has jurisdiction over the Texas residents claims against Jackson (Dkt. #99 at p. 4)—and certification issue—if reversed, individual breach of contract claims against Jackson will still exist.

## CONCLUSION

It is therefore **ORDERED** that Defendant Jackson National Life Insurance Company's Emergency Motion to Stay Pending Interlocutory Appeal (Dkt. #101) is hereby **GRANTED in part**. Accordingly, the case is stayed pending the outcome of the appeal to the Fifth Circuit with the exception of the Court ruling on Jackson's motion for summary judgment.

**SIGNED this 12th day of June, 2018.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE