IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| DAVID CRUSON AND JOHN DENMAN § § § *Plaintiffs*, § § v. § § JACKSON NATIONAL LIFE INSURANCE § COMPANY § § *Defendant*. § § § | Civil Action No. 4:16-CV-912-ALM JURY TRIAL |

**ORDER GRANTING CLASS COUNSEL'S JOINT UNOPPOSED MOTION FOR
AWARD OF ATTORNEYS' FEES, SERVICE AWARDS, AND COSTS**

Class Counsel, McKool Smith and Corley Law Firm, brought this lawsuit on behalf of David Cruson and John Denman and a class of others similarly situated ("Class Members"). Plaintiffs alleged that Defendant Jackson National Life Insurance Company unlawfully overcharged Class Members pursuant to certain withdrawals. Class Counsel have secured $8,750,000 for a class of roughly 200,000 current and former Jackson customers. Having secured a common fund for the Class, McKool Smith and Gary Corley now move the Court to award (1) reasonable attorneys' fees of $1,500,000 to McKool Smith and $1,000,000 to Gary Corley, (2) nontaxable costs of $181,396.66 to McKool Smith and $1,225.06 to Gary Corley, and (3) service

awards of $1,000 to Misters Cruson and Denman. Having reviewed the motion and supporting briefs and declarations, the Court grants the motion in its entirety.[1]

## I. LEGAL STANDARD

"In a certified class action, [a] court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. (23)(h). The Court retains an "independent duty" to "ensure that attorneys' fees are reasonable and divided up fairly among plaintiffs' counsel. *In re High Sulfur Content Gasoline Prod. Liab. Litig.*, 517 F.3d 220, 227 (5th Cir. 2008) (cleaned up). This rule applies with equal force to common-fund cases. *Id.* at 227–28. When, as here, all co-counsel agree on the proper allocation of fees, the Court may determine an "aggregate fee award" and allow co-counsel to "allocate the award by agreement among themselves." *Id.* at 233; *see Torres v. SGE Mgmt., L.L.C.*, 945 F.3d 347, 355 (5th Cir. 2019).

## II. DISCUSSION

### A. The Requested Fee Is Reasonable.

Under the common-fund doctrine, "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 96 (2013) (cleaned up).

"In common fund cases, courts typically use one of two methods for calculating attorneys' fees: (1) the percentage method, in which the court awards fees as a reasonable percentage of the common fund; or (2) the lodestar method, in which the court computes fees by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate and, in its discretion, applying an upward or downward multiplier." *Union Asset Mgmt.*

---

[1] The Court assumes familiarity with these proceedings and writes primarily for the parties.

*Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 642–43 (5th Cir. 2012). "In the Fifth Circuit, courts set the lodestar multiplier by applying the *Johnson*[2] factors." *Id.* at 643 n.26.

"In cases involving a common fund, the Fifth Circuit has expressly approved of the use the percentage method to calculate attorney's fees, so long as it is cross-checked with the *Johnson* factors." *Ramirez v. J.C. Penney Corp., Inc.*, No. 6:14-CV-601, 2017 WL 6462355, at *5 (E.D. Tex. Nov. 30, 2017), *report and recommendation adopted*, No. 6:14CV601, 2017 WL 6453012 (E.D. Tex. Dec. 18, 2017); *Cunningham v. Kitchen Collection, LLC*, No. 4:17-CV-770, 2019 WL 2865080, at *3 (E.D. Tex. July 3, 2019). Indeed, when, as here, litigants propose a percentage, "courts generally begin by looking to the parties' proposed percentage as the starting point to determine the benchmark fee." *Shaw v. CAS, Inc.*, No. 5:17-CV-142, 2018 WL 3621050, at *3 (S.D. Tex. Jan. 31, 2018) (cleaned up and collecting cases).

Here, the requested fee is reasonable, a conclusion reached by application of either the percentage method, with a *Johnson* factor cross-check, or the lodestar method. The Court undertakes analyses under both methods.

    **1.**    **The Requested Fee Is Reasonable under the Percentage Method.**

The Settlement generates a common fund of $8,750,000 for the Class, and Class Counsel move for a collective award of $2,500,000, which is 28–29% of the common fund. This fee is "not excessive." *Marcus v. J.C. Penney Co., Inc.*, No. 6:13-CV-736, 2017 WL 6590976, at *6 (E.D. Tex. Dec. 18, 2017), *report and recommendation adopted*, No. 6:13CV736, 2018 WL 307024 (E.D. Tex. Jan. 4, 2018). "A review of Fifth Circuit precedent suggests a benchmark fee of 30%." *Rodriguez v. Stage 3 Separation, LLC*, No. 5:14-CV-00603-RP, 2015 WL 12866212, at *5 (W.D. Tex. Dec. 23, 2015); *see Marcus*, 2017 WL 6590976, at *6; *see also* Manual for

---

[2] *Johnson v. Ga. Highway Exp., Inc.*, 488 F.2d 714, 718 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989).

Complex Litigation (Fourth) § 14.121 (2010). Indeed, "numerous courts in this Circuit have awarded fees in the 30% to 36% range." *Erica P. John Fund, Inc. v. Halliburton Co.*, No. 3:02-CV-1152-M, 2018 WL 1942227, at *9 (N.D. Tex. Apr. 25, 2018); *id.* at *9 n.8 (collecting cases). Here, the requested collective fee of 28–29% of the common fund is facially reasonable under controlling precedent.[3]

### 2. The Requested Fee Is Reasonable under the Lodestar Method.

If the Court applies the percentage method, the Court need not undertake the lodestar method. *Dell*, 669 F.3d at 642–43. "In calculating a lodestar," though, "the number of hours reasonably expended by the attorneys are multiplied by an appropriate hourly rate in the community for such work." *Cunningham*, 2019 WL 2865080, at *4.

"The party seeking reimbursement of attorneys' fees bears the burden of establishing the number of hours expended through the presentation of adequately recorded time records as evidence. The Court then uses this as a benchmark and excludes any time that is excessive, duplicative, unnecessary, or inadequately documented. The hours remaining are those reasonably expended." *Id.* (cleaned up).

"The reasonable hourly rate is the rate 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.' The relevant legal community is the community where the district court sits." *Fessler v. Porcelana Corona de Mex., S.A. de C.V*, No. 4:17-CV-00001, 2020 WL 1974246, at *5 (E.D. Tex. Apr. 24, 2020) (cleaned up).

---

[3] Class Counsel's calculations are based on the *gross* settlement. "A district court has discretion to award Class Counsel a percentage of the gross class action settlement fund, provided that its award of attorneys' fees is reasonable." *Kornell v. Haverhill Ret. Sys.*, 790 F. App'x 296, 298 (2d Cir. 2019) (applying Rule 23(h) to uphold the district court's discretion in applying the percentage method to the gross settlement). Even if the Court were to apply the percentage method to the *net* settlement, though, the requested fee would still be less than 30%.

### a. McKool Smith

McKool expended 2,977.60 hours litigating this case. Ex. A, LeClair Decl. ¶ 24. Mr. LeClair, lead counsel, employed the legal professionals under his supervision in an efficient manner, delegating as much work as possible to associates. *Id.* ¶ 35. He also disregarded billings for timekeepers who billed fewer than ten hours, *id.* ¶ 26, and other billings he deemed inappropriate. Specifically, he cut about 5% of the total hours. *Id.* ¶ 24.

McKool's average hourly rates varied from $290.09 to $951.22. *Id.* ¶ 27. "An attorney's requested hourly rate is prima facie reasonable when he requests that the lodestar be computed at his or her customary billing rate, the rate is within the range of prevailing market rates, and the rate is not contested." *Fessler*, 2020 WL 1974246, at *5 (cleaned up). Those three requirements are met here. McKool has not deviated from its standard hourly rates. LeClair Decl. ¶ 25. Having litigated complex commercial cases in this District before, Mr. LeClair testifies that these rates are within the range of prevailing market rates. *Id.* And though Mr. LeClair's and Ms. Houssiere's respective average rates of $951.22 and $823.94 are high, they are within the range of prevailing market rates for similar lawyers for similar services. *See, e.g.*, *Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co.*, No. 4:14-CV-00371, 2018 WL 1602460, at *7 (E.D. Tex. Apr. 3, 2018) (approving rates as great as $1,100 per hour in complex commercial litigation). And Defendants do not oppose these rates.

### b. Gary Corley

Gary Corley expended 1,530.5 hours litigating this case. Ex. B, Corley Decl. ¶¶ 10, 14. Mr. Corley employed the legal professionals under his supervision in an efficient manner. *Id.* ¶ 11. He also disregarded billings he deemed inappropriate. *Id.* ¶ 9. Gary Corley's hourly rates varied from $250.00 to $400.00. *Id.* ¶ 10. These rates are his customary rates. *Id.* ¶ 14. Given the complexity of this case, the skill required to litigate the case, and the contingent nature of the

5

case, however, Gary Corley respectfully requests that his own hourly rate be increased from $400.00 to $650.00. *Id.* Having litigated complex commercial cases in this District before, Mr. Corley testifies that these rates are within the range of prevailing market rates. *Id.* ¶ 14. The Court agrees. For purposes of calculating Gary Corley's lodestar, therefore, the Court assumes an hourly rate of $650.00.

* * *

"The lodestar is presumed to be reasonable and should only be modified in exceptional cases." *Cunningham*, 2019 WL 2865080, at *4. As explained below, none of the *Johnson* factors rebut that presumption, so Class Counsel's requested fee is reasonable and is awarded accordingly.

### 3. The *Johnson* Factors Support the Award's Reasonableness under Both the Percentage and Lodestar Methods.

Under either the percentage or lodestar method, a court must undertake a cross-check under the *Johnson* factors. *Dell*, 669 F.3d at 642–43. "The twelve factors are (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal service adequately; (4) the preclusion of other employment by the attorney because he accepted this case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Id.* at 642 n.25. Each of the relevant *Johnson* factors supports the requested fee.[4]

---

[4] When awarding fees under Rule 23, a district court "must find the facts and state its legal conclusions under Rule 52(a)." Fed. R. Civ. P. 23(h)(3). "To avoid the risk of remand," therefore, "the district court should explain with a reasonable degree of specificity the findings and reasons upon which the award is based, including an indication of how each of the *Johnson*

Time and Labor Required. "The first factor, the time and labor required, centers on billing judgment." *ODonnell v. Harris Cty.*, No. CV H-16-1414, 2019 WL 6219933, at *25 (S.D. Tex. Nov. 21, 2019). As timekeeper-in-charge, Mr. LeClair exercised his professional judgment to disregard certain time. LeClair Decl. ¶ 24. That billing judgment indicates the lodestar is proper as is. Simply put, nothing about this factor warrants a departure from McKool's lodestar of $1,980,364.50. *Id.* ¶ 27.

Novelty and Difficulty of the Issues. "The second factor examines the novelty and difficulty of the issues." *ODonnell*, 2019 WL 6219933, at *26. "Cases of first impression generally require more time and effort on the attorney's part." *Johnson*, 488 F.2d at 718. Class Counsel were required to litigate many difficult issues. Take just one example to get a flavor of the litigation. Defendants argued the Court lacked personal jurisdiction over putative Class Members' claims. ECF No. 60 at 31–33. In particular, Defendants argued the Court lacked specific personal jurisdiction and invoked as precedent the Supreme Court's recent decision in *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773 (2017). ECF No. 60 at 32–33. The extent to which *Bristol-Myers Squibb* applies to class actions was, and is, unclear. *See Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240, 247 n.4 (5th Cir. 2020) ("*Bristol-Myers* held that, in a mass tort action, a California court could not exercise specific jurisdiction over a non-California corporation with respect to claims by nonresidents based on conduct and injuries outside California. The decision left open how it would apply to federal courts or class actions." (cleaned up)). This issue alone rendered the litigation complex. *Cf., e.g., ODonnell*, 2019 WL 6219933, at *26 (holding this factor favored the requested fee when the case presented difficult

---

factors was applied." *Forbush v. J.C. Penney Co.*, 98 F.3d 817, 823 (5th Cir. 1996) (cleaned up). As the Fifth Circuit recently clarified, moreover, the district court should discuss the *Johnson* factors as they apply both to the "fee *sum*" and its "*allocation* among the various attorneys." *Torres*, 945 F.3d at 354 (emphasis in original).

questions over, among other issues, "federal jurisdiction"). The case also presented difficult issues of contract interpretation and insurance coverage. LeClair Decl. ¶ 29. The factor therefore supports the requested fee.

Skill Required to Perform the Legal Service Adequately. "The third factor is the skill required to prosecute the plaintiffs' claims." *ODonnell*, 2019 WL 6219933, at *26. "This factor is satisfied when 'counsel performed diligently and skillfully, achieving a speedy and fair settlement, distinguished by the use of informal discovery and cooperative investigation to provide the information necessary to analyze the case and reach a resolution.'" *Id.* (cleaned up). Class Counsel shepherded this case from filing to resolution in about four years—a remarkable result given a once-in-a-lifetime global pandemic has wrought the world for the past fourteen months. Class Counsel undertook, in cooperation with opposing counsel, informal discovery on damages, with particular focus on Jackson's data and systems for maintaining the data. LeClair Decl. ¶ 6. Class Counsel then analyzed that information in detail. *Id.* The factor therefore supports the requested fee.

Preclusion of Other Employment by the Attorney Because He Accepted This Case. "The fourth factor asks whether litigating this case precluded class counsel from other employment." *ODonnell*, 2019 WL 6219933, at *26. "This guideline involves the dual consideration of otherwise available business which is foreclosed because of conflicts of interest which occur from the representation, and the fact that once the employment is undertaken the attorney is not free to use the time spent on the client's behalf for other purposes." *Id.* McKool expended nearly 3,000 hours on this litigation and forewent other legal work for which it could have been compensated on an hourly basis. LeClair Decl. ¶¶ 24, 31. Gary Corley expended more than 1,500 hours. Corley Decl. ¶¶ 10, 14. Class Counsel's representation here "imposed a substantial

opportunity cost on them, occupying large amounts of time that they could otherwise have spent on other matters," whether hourly, contingent, or hybrid. *See ODonnell*, 2019 WL 6219933, at *26. The factor therefore supports the requested fee.

<u>Customary Fee for Similar Work in the Community.</u> "The fifth factor requires the court to analyze customary fees for similar work in the community." *Id.* "It is open knowledge that various types of legal work command differing scales of compensation." *Johnson*, 488 F.2d at 718. Mr. LeClair has litigated complex commercial cases in the region for more than forty years. LeClair Decl. ¶ 2. In that role, he regularly reviews and adjusts billing records. *Id.* ¶ 24. Mr. LeClair is thus well-versed in customary fees for this type of complex work. *Id.* Mr. LeClair's declaration thus constitutes "uncontroverted evidence that class counsel's claimed rates are reasonable and that the proposed award reflects a conservative market-based fee." *See ODonnell*, 2019 WL 6219933, at *26. The factor therefore supports the requested fee.

<u>Whether the Fee Is Fixed or Contingent.</u> "Under the sixth factor, the court evaluates class counsel's fee arrangement." *Id.* "The contingent nature of the fee favors an increase in the typical benchmark percentage." *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 678 (N.D. Tex. 2010).[5] Here, Class Counsel litigated the case on a contingent-fee basis. LeClair Decl. ¶ 4; Corley Decl. ¶ 13. Even though this factor favors an increase of the lodestar, McKool asks for no upward adjustment, and Gary Corley asks for a small upward adjustment.[6] The Court holds this factor supports the requested fee.

---

[5] *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 678 (N.D. Tex. 2010) , *as modified* (June 14, 2010), *judgment entered* (June 18, 2010), *enforcement denied*, No. 7:03-CV-102-D, 2011 WL 2413318 (N.D. Tex. June 15, 2011).

[6] This Court has held, pursuant to the Supreme Court's decision in *City of Burlington v. Dague*, 505 U.S. 557 (1992), the sixth factor may not justify an upward departure from the lodestar. *Fessler*, 2020 WL 1974246, at *9. Though *Dague* applies to statutory fee-shifting cases, it does "not apply to common-fund class action settlement cases." *In re Enron Corp. Sec.,*

Time Limitations Imposed by the Client or the Circumstances. "The seventh factor looks to the time limitations the circumstances imposed." *ODonnell*, 2019 WL 6219933, at *27. "Priority work that delays the lawyer's other legal work is entitled to some premium." *Oxford v. Beaumont Indep. Sch. Dist.*, No. CIV A 196-CV-706, 2002 WL 34188379, at *5 (E.D. Tex. Dec. 19, 2002) (cleaned up). McKool seeks no premium, however, and this factor is therefore "not applicable." *See id.*

Amount Involved and the Results Obtained. "The eighth factor, the amount involved and the results obtained, is 'the most critical factor in determining the reasonableness of a fee award.'" *ODonnell*, 2019 WL 6219933, at *27.

A court should consider the "result obtained relative to the fee award" and the "the result obtained relative to the result sought." *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1048 (5th Cir. 1998). Both considerations support the requested fee. Class Counsel seek in fees $2,500,000, leaving about $6,250,000 of the $8,750,000 for the Class. Put differently, *Class Members will retain two-and-one-half times the amount as Class Counsel*.[7] The result is even more reasonable considering the value of the non-monetary aspects of the Settlement—namely, an explanation of Jackson's fee methodology. *Cf. Shipes v. Trinity Indus.*, 987 F.2d 311, 322 (5th Cir. 1993) (holding this factor embodies non-monetary relief). Plaintiffs pled a single wrong, and the Settlement accounted for the full scope of the wrongdoing. The red flags fly when class counsel recover for themselves more than they recover for the class. *See, e.g.*, *Gurule v. Land Guardian,*

---

*Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 757 (S.D. Tex. 2008); *see Klein*, 705 F. Supp. 2d at 678. "[T]he need for such an adjustment is particularly acute in class action suits. The lawyers for the class receive no fee if the suit fails, so their entitlement to fees is inescapably contingent." *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 565 (7th Cir. 1994) (cleaned up).

[7] The Court says "about" because the requested reimbursement of nontaxable costs would, like the fees, be deducted from the common fund.

*Inc.*, 912 F.3d 252, 259 (5th Cir. 2018) (collecting cases). No such flags fly here, when the Class Members receive much more than Class Counsel.

To be sure, the Settlement has not generated the maximum conceivable amount of damages. "But simply because Class Counsel did not receive every bit of relief requested in Plaintiffs' [Complaint] is not reason to reduce the lodestar." *Fessler*, 2020 WL 1974246, at *11. "The overarching question that courts should ask in such circumstances is whether the attorney expended the time in a good faith pursuit of value for the client—or was instead engaged in churning attorney fees. If the former, the time may be awarded, even though it ultimately proved fruitless." *Id.* (cleaned up). Class Counsel largely prevailed in this Court, including on the issue of class certification, but were then forced to defend Plaintiffs' victory in the Fifth Circuit. LeClair Decl. ¶ 30. When the panel vacated the class-certification order, Class Counsel were forced to define and pursue a new strategy, a strategy that led to this Settlement. *Id.* Class Counsel's ability to process and respond to turning points in the case indicates that the fees were incurred in "good faith."

The factor therefore supports the requested fee, a conclusion amplified by the fact Class Counsel have received, despite excellent class notice, only a single objection. *Cf. In re Shell Oil Refinery*, 155 F.R.D. 552, 572 (E.D. La. 1993) (pointing to the "infinitesimally small number of objections" as evidence the "class members themselves [were] satisfied").

<u>Experience, Reputation, and Ability of the Attorneys.</u> "The ninth factor, class counsel's experience, reputation, and ability, strongly supports approving the requested award." *ODonnell*, 2019 WL 6219933, at *27. Mr. LeClair, lead counsel, has roughly forty years of experience litigating complex commercial cases. LeClair Decl. ¶ 2. Mr. LeClair and the legal professionals under his supervision are highly credentialed. *Id.* ¶¶ 2, 18–23. McKool Smith is a nationally

11

recognized trial boutique, having obtained more top-one hundred jury verdicts than any other law firm in the country. *Id.* ¶ 3. In 2019, Benchmark Litigation designated McKool Smith "Texas Law Firm of the Year." *Id.* The factor therefore supports the requested fee.

Undesirability of the Case. "The court also evaluates the 'undesirability' of the case. This factor relates closely to the sixth factor—class counsel's fee arrangement." *ODonnell*, 2019 WL 6219933, at *27. "[T]he 'risk of non-recovery' and 'undertaking expensive litigation against well-financed corporate defendants on a contingent fee' has been held to make a case undesirable, warranting a higher fee." *Halliburton*, 2018 WL 1942227, at *12 (cleaned up). As with the sixth factor, though, McKool does not ask for an upward adjustment, and Gary Corley asks for a small upward adjustment. The Court holds this factor supports the requested fee.

Nature and Length of the Professional Relationship with the Client. "The eleventh factor looks to the length and nature of class counsel's relationship with their clients." *ODonnell*, 2019 WL 6219933, at *27. Misters Cruson and Denman each testify, in their belief, Class Counsel have represented them well. Ex. C, Cruson Decl. ¶ 6; Ex. D, Denman Decl. ¶ 6. The Court accords their testimony weight. *Cf. ODonnell*, 2019 WL 6219933, at *27. The factor therefore supports the requested fee.

Awards in Similar Cases. "The final factor, a review of awards in similar cases, strongly favors holding that the claimed fees are reasonable." *Id.* By agreement, McKool will retain $1,500,000 and Gary Corley will retain $1,000,000 of Class Counsel's aggregate requested fee of $2,500,000. As explained, the Court may allow Class Counsel to divide the aggregate fee by agreement. *See supra* Part II. The Court honors Class Counsel's division here. McKool's lodestar of $1,980,364.50 results in a lodestar multiplier of 0.76. Gary Corley's lodestar of $911,785.00 (based on an hourly rate for Mr. Corley of $650.00) results in lodestar multiplier of 1.10. Both

lodestar multipliers are reasonable when compared to awards in similar cases. When analyzing this factor, a court may examine cases within and without the Circuit. *Johnson*, 488 F.2d at 719. The average lodestar multiplier for complex consumer cases is 1.82. *See, e.g.*, *Grice v. Pepsi Beverages Co.*, 363 F. Supp. 3d 401, 411 (S.D.N.Y. 2019). The factor therefore supports the requested fee.

*   *   *

Class Counsel's requested fee of $2,500,000 is facially reasonable under the percentage method, and Class Counsel's lodestar is entitled to a presumption of reasonableness under the lodestar method. Nothing about the *Johnson* factors warrants a departure from the requested fee. The Court awards the fee accordingly.

**B.     The Requested Nontaxable Costs Are Appropriate.**

Class Counsel move to recover their nontaxable costs. "In addition to being entitled to reasonable attorneys' fees, class counsel in common fund cases are also entitled to reasonable litigation expenses from that fund." *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1089 (S.D. Tex. 2012) (cleaned up); *see* Fed. R. Civ. P. 23(h) (authorizing the recovery of "nontaxable costs"). The costs are recoverable so long as they are documented and would otherwise be paid by a fee-paying client. 5 *Newberg on Class Actions* § 16:10 (5th ed.); *see DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 334 (W.D. Tex. 2007) ("The appropriate analysis to apply in determining which expenses are compensable in a class action case is whether such costs are of the variety typically billed by attorneys to clients." (cleaned up and collecting cases)). McKool Smith incurred $181,396.66 in costs in connection with prosecuting this lawsuit. LeClair Decl. ¶ 36. These costs include, for example, consulting expert fees and court-reporting fees. LeClair Decl., Ex. A-3. McKool Smith has chosen to bear the burden of certain costs like communications charges, postage, and meals. LeClair Decl. ¶ 36.

The remaining costs are appropriately reimbursable to McKool Smith. Gary Corley incurred $1,225.06 in costs in connection with prosecuting this lawsuit. Corley Decl. ¶ 15. These costs were incurred for case-related travel. *Id.* The Court holds all such costs are reimbursable. *Cf. Fessler*, 2020 WL 1974246, at *13 (explaining "consulting expert fees, transportation, meals and lodging, in-house and outsourced photocopying, research, court reporting fees and deposition transcripts, overnight courier services, postage, and other services that are necessary and reasonable to prosecuting and settling a class action are reimbursable").

      **C.**    **The Requested Service Awards Are Appropriate.**

Class Counsel also move the Court to award $1,000 each to named Plaintiffs, David Cruson and John Denman. "Service awards to class representatives are permissible where they are fair and reasonable." *Cunningham*, 2019 WL 2865080, at *3 (cleaned up). When named plaintiffs or class members have sat for depositions, this Court has approved service awards of between $4,000 and $6,500 and recognized that courts in this Circuit grant awards upwards of $10,000. *Id.* Misters Cruson and Denman each sat for or prepared for depositions and performed other services like attending hearings, assisting with document production, and assisting third-party vendors. Cruson Decl. ¶¶ 3, 7; Denman Decl. ¶¶ 3, 7. These efforts were valuable to Class Counsel. The modest service awards will be granted accordingly.

**III.**    **CONCLUSION**

In summary, Class Counsel's motion is **GRANTED**. The Court hereby **ORDERS** that (1) co-Class Counsel McKool Smith be awarded $1,500,000 in reasonable attorneys' fees, (2) co-Class Counsel Gary Corley be awarded $1,000,000 in reasonable attorneys' fees, (3) McKool Smith be reimbursed $181,396.66 in reasonable costs, (4) Gary Corley be reimbursed $1,225.06 in reasonable costs, (5) named Plaintiff David Cruson be awarded $1,000 as a service award, and (6) named Plaintiff John Denman be awarded $1,000 as a service award. These fees, costs, and

awards shall be payable from the common fund of $8,750,000 created by Class Counsel for the benefit of the Class.

**IT IS SO ORDERED.**

SIGNED this 4th day of June, 2021.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE